1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    EASTERN DISTRICT OF WASHINGTON

7  RAHCO INTERNATIONAL, INC., a    )    No. CV-06-0216-AAM
   Washington Corporation          )
8                                   )
                    Plaintiff,      )
9                                   )    ORDER GRANTING
                                    )    DEFENDANT'S MOTION TO
10 LAIRD ELECTRIC, INC., a foreign  )    DISMISS
   corporation,                     )
11                                  )
                    Defendant.      )
12                                  )
                                    )
13 ─────────────────────────────────

14     **BEFORE THE COURT** is Defendant Laird Electric Inc.'s Motion to

15 Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) (Ct. Rec. 8) filed on

16 September 1, 2006.   On October 12, 2006, the Court heard oral

17 argument.   John Guin appeared on behalf of Plaintiff and Leslie

   Weatherhead appeared on behalf of Defendant.
18
                           **I. BACKGROUND**
19
       The Plaintiff, RAHCO International, Inc. (RAHCO) is a Spokane,
20
   Washington corporation engaged in the manufacturing of industrial
21
   equipment.   In June 2005, RAHCO finalized and signed a contract
22
   with Suncor Energy, Inc (Suncor), to design, manufacture, deliver
23
   to site, and assemble a mobile conveyor system consisting of three
24
   large pieces of industrial equipment for use at Suncor's mine site
25
   near Fort McMurray, Alberta, Canada. Defendant Laird Electric, Inc.
26
   (Laird), is a Canadian corporation and performed work on the Suncor
27

   Order - 1

mining project for RAHCO. At the time RAHCO signed the contract with Suncor, RAHCO had already commenced the design and manufacture of the equipment, under a letter of intent from Suncor dated December 16, 2004.

The subcontract between Laird and RAHCO came about as follows. On or about mid-June 2005, David Stralka, RAHCO's product support manager, contacted Ron Wilson at Laird and requested a price quote from Laird to supply the labor and equipment necessary for the electrical portion of the work needed to assemble the mobile conveyor system at the Suncor mine site. RAHCO provided Laird with a written "master cable list" prepared for the Suncor project to assist Laird in preparing a price quote. On June 30, 2005, Laird emailed RAHCO a budget proposal of $466,870.00 (Canadian) plus rate sheets for the work ("Budget Letter"). See Stralka Affidavit, Ct. Rec. 13, Ex. B.

After receiving the bid, Stralka sent an email back to Wilson indicating "[w]e have reviewed your proposal and feel we can work together on this project. We'll be in Ft. McMurrey [SIC] on 19 July 2005 and would like to sit down with you [SIC] go over the details and sign an agreement. Does the 19th of July work for you?" Stralka Affidavit, Ct. Rec. 13, Ex. C. Stralka and Wilson exchanged emails indicating they would meet on July 19, 2005 in Fort McMurray to further discuss the matter.

In July, RAHCO and Laird executives met in Fort McMurray. It is undisputed that at that meeting Stralka provided Laird some drawings ("layout drawings"). The parties dispute what was said at

Order - 2

the meeting regarding future course of action. RAHCO claims it informed Laird the work would be done under a fixed-price contract. Stralka Affidavit, Ct. Rec. 13 at ¶ 5. Laird denies this and claims they had agreed approvals which would be made according to "time undertaken, equipment utilized and materials purchased by Laird." Bannerholt Declaration, Ct. Rec. 17 at ¶ 5. Blair Bannerholt, President and Chief Operating Officer for Laird, who was present at the meeting, claims Laird executives were told that while they would be receiving engineered drawings in the future, Laird would not be receiving a narrative scope of work and that on site personnel would be directing their activities. Bannerholt Declaration, Ct. Rec. 17 at ¶ 5.

On July 28, 2005, and prior to any work being performed by Laird, RAHCO issued Purchase Order No. 11340 (Stralka Affidavit, Ct. Rec. 13, Ex. D) and several accompanying documents (collectively, the "Purchase Order documents"). It was signed by Cary Ross, a Purchasing Agent for RAHCO. The first page provides a brief description of the work:

> "[Laird Electric, inc.] to supply labor and equipment for the installation and assembly of the RAHCO supplied equipment to Suncor.
> See attachments for Scope of Work, Payment, non-disclosure agreement, special terms, technical information and safety.
> Payment will be based on time and materials using rate sheets supplied to RAHCO from Laird Electric with a not to exceed price of Canadian dollar in the amount of $446,870.00.
> Additional work not covered in the Scope of Work may be required. All additional work must be approved, in writing, by a RAHCO representative prior to commencement of the work."

Order - 3

Stralka Affidavit, Ct. Rec. 13, Ex. D.  Following this language, in all capital letters it states:

> THIS ORDER MUST BE ACCEPTED IN WRITING ON THE ATTACHED ACKNOWLEDGMENT FORM OR BY SEPARATE ACKNOWLEDGMENT

*Id.*

The second page of the Purchase Order has the heading "Terms and Conditions" and includes the following forum selection clause:

> DISPUTES: This Agreement will be governed by the laws of the State of Washington.  Any dispute relating to this Agreement must be heard before a court of competent jurisdiction in Spokane County, Washington, USA.  In any suit, the prevailing party will be entitled to its reasonable costs, including attorneys' fees.

Stralka Affidavit, Ct. Rec. 13, Ex. D.

Stralka hand delivered the Purchase Order documents and other drawings to Laird's office in Ft. McMurray on August 2, 2005. It is undisputed that no one with the authority to execute the Purchase Order documents ever saw them until sometime after October 7, 2006. Laird claims Stralka delivered the documents to a fill-in receptionist for Laird, who forwarded them to Brad Chartrand (See Declaration of Sheree Cameron, Ct. Rec. 19), who in turn forwarded them to Rick Baker in the accounting department (see Declaration of Brad Chartrand, Ct. Rec. 20).  Baker apparently filed the Purchase Order believing it was to be used for reference when billing RAHCO. Baker had no authority to execute the Purchase Order and had no

Order - 4

1  involvement in the preparation of the Budget Letter sent earlier.[1]
2  Bannerholt Declaration, Ct. Rec. 17 at ¶ 11.

3      Coincidentally, on the same day Stralka delivered the Purchase
4  Order documents, August 2, 2005, Gary Crummey, Project Manager for
5  Laird, spent 10 hours for what he later billed to RAHCO as "Review
6  of Contract documents."  Stralka Affidavit, Ct. Rec. 13, Ex. F.
7  Crummey's time sheets evidence that in the following days he billed
8  over 50 hours for time spent reviewing "contract documents", taking
9  a site tour, discussing the schedule with Stralka, and developing
10  a "3-week plan," a "Q/A[2] labour plan" and a "Q/A schedule."
11  Stralka Affidavit, Ct. Rec. 13, Ex. F.

12      RAHCO never obtained a signed copy of the Purchase Order
13  documents from Laird or a written acknowledgment form, as was
14  required according to the Purchase Order.  On August 21, 2005,
15  however, Laird sent a letter to RAHCO indicating it was ready to
16  commence work on August 30. Stralka Affidavit, Ct. Rec. 13, Ex. G.
17  On August 31, 2005, Laird submitted its first invoice to RAHCO.
18  The invoice, and all subsequent invoices, reference Purchase Order
19  No. 11340, as was required by the terms of the Purchase Order
20  documents.  Stralka Affidavit, Ct. Rec. 13, Ex. F, I.

21
22
23
_____

[1] At the hearing, counsel for RAHCO submitted a printed copy
24  of a page of Laird's website which listed Rick Baker under the
     heading "Management" and his position as Controller.  This
25  evidence does not undermine or controvert the sworn statement of
     Blair Bannerholt regarding Baker's authority with respect to the
26  Purchase Order documents.

27      [2] "Quality Assurance."

Order - 5

1    Laird claims to have not even been aware of the Purchase Order
2    documents until October 7, 2005, well after its performance of the
3    work had begun.[3]   See Crummey Declaration, Ct. Rec. 18 at ¶ 9.
4    Laird claims the reason the invoices reference the Purchase Order
5    is because the accounting department used it, though it had been
6    improperly routed there without prior review or approval by the
7    proper Laird executives.   Bannerholt Declaration, Ct. Rec. 17 ¶
8    11(d).   Crummey claims that the hours he billed earlier for
9    "contract review" were for time spent reviewing Laird's own Budget
10   Letter and the preliminary drawings provided to Laird at the July
11   meeting.   Although the Purchase Order specifically requires the
12   development of a "Q/A plan" (see Stralka Affidavit Ex. D, Scope of
13   Work, §I(2)(e),(f)), Crummey claims Laird's internal management
14   policies require that every project have a QA/QC policy; that
15   Suncor projects always require a Q/A schedule; and that it is good
16   practice for a Project Manager to ensure such a schedule exists.
17   Crummey Declaration, Ct. Rec. 18 at ¶6.

18       In September, Laird began to submit "Requests for Information"
19   for clarifications or changes of the scope of the work and payment
20   terms.   See examples at Stralka Affidavit, Ct. Rec. 13, Ex. H. Many
21   requests specifically complain that certain demands were "not part
22   of scope of work."   *Id*.   Laird claims that it proceeded in this

---

24       [3] The Court notes the letter from Crummey mailed on August
25   21, 2005 also states: "Please verify the arrival of Jorge Ascuy,
     Technician for the execution of the main contract."   *Id*.   It is
     not clear from the record what the "main contract" refers to. As
26   the parties did not point to this statement in any of their
     arguments, the Court assumes it cannot be construed as a
27   reference to the Purchase Order documents.

Order - 6

fashion not because of the terms of the Purchase Order, but because it was the established mechanism that Laird used on all of its other work performed on other Suncor projects.    Bannerholt Declaration, Ct. Rec. 17 at ¶ 9.

Subsequently, a dispute arose between RAHCO and Laird concerning the work performed by Laird and RAHCO's duty to pay. Dowler Declaration, Ct. Rec. 9 at ¶ 17.  Apparently that dispute has been submitted to the Canadian courts for adjudication.  *Id.* In addition, Laird has commenced proceedings against Suncor and RAHCO in the Canadian courts seeking payment. *Id.*

A complaint was filed by RAHCO against Laird in Spokane Superior Court on June 15, 2006 alleging breach of contract.  Laird removed the action to federal court and moved for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2).  Laird contends that since the Purchase Order was never signed, the agreement is invalid, and RAHCO's assertion of personal jurisdiction based upon its forum selection clause must fail. In opposition, RAHCO argues Laird's continued performance constituted an acceptance of the terms of the unsigned Purchase Order documents, including the forum selection clause, and thus the Purchase Order was a valid, binding agreement and its Complaint should not be dismissed.

## II. DISCUSSION

### A. FRCP 12(b)(2)

Although the plaintiff ultimately has the burden to prove that the defendant is subject to personal jurisdiction, when a motion to

Order - 7

dismiss is evaluated without an evidentiary hearing (as in this case), the plaintiff need only make a prima facie showing to survive dismissal pursuant to FRCP 12(b)(2). *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir. 1990); *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir. 2003). To establish a prima facie showing of personal jurisdiction, plaintiff must provide evidence, that if believed, would support the court's exercise of jurisdiction over the defendant. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). The court need not accept the plaintiff's bare allegations if the defendant controverts them with evidence. *See AT & T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). If both parties provide evidence supporting different versions of a fact, however, the court must resolve competing inferences in the plaintiff's favor. *Harris Rutsky*, 328 F.3d at 1129.

Once the prima facie case is established, the burden shifts to the defendant to establish that jurisdiction is unreasonable. *Burger King v. Rudkewicz*, 471 U.S. 462, 477-78, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). A defendant may not simply contest the factual allegations made by the plaintiff, but instead must demonstrate additional considerations which undermine the court's personal jurisdiction over the defendant to overcome the plaintiff's prima facie showing. *Id*. at 476.

/ / /

/ / /

Order - 8

**B. Application**

Ordinarily the starting point of an analysis of personal jurisdiction involving an out-of-state defendant is the familiar due process "minimum contacts" inquiry. *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1168-69 (9th Cir. 2006)(citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). However, parties may consent to the jurisdiction of a particular court through the use of a forum-selection clause in a contract, regardless of minimum contacts. *See Burger King Corp.*, 471 U.S. at 473, n. 14("[B]ecause the personal jurisdiction requirement is a waivable right, there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court"). Where a forum selection provision has been obtained through a "freely negotiated" agreement and is not "unreasonable and unjust," *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972), its enforcement does not offend due process. *Burger King Corp.*, 471 U.S. at 473, n. 14.

In this case, RAHCO does not contest Laird's contention that Laird's contacts with Washington are insufficient to confer jurisdiction. Consequently, jurisdiction in this case rests solely on the application of the forum selection clause contained in RAHCO's Purchase Order documents. The Court, however, need not decide the broader question of whether the contract between RAHCO and Laird includes the Purchase Order Terms and Conditions. The precise terms of the parties' agreement is a question for another day. Regardless, the forum selection clause in this case is

Order - 9

1  unenforceable because it is has not been obtained through a freely

2  negotiated agreement.

3       As evidenced by the defendants' affidavits, which are not

4  challenged by plaintiff, not only is there no indication that the

5  choice of forum was ever bargained for or discussed, but there is

6  also no indication that any of the Purchase Order documents were

7  the result of negotiation between the parties.  Instead, it is

8  RAHCO's contention that Laird gave implied consent to the terms of

9  the Purchase Order through its course of conduct and performance of

10  the work described in the Purchase Order documents. In making this

11  argument, RAHCO admits the absence of negotiation.

12       It is undisputed that the Purchase Order documents were never

13  signed by Laird. Nevertheless, given the law's strong favor toward

14  the enforcement of forum selection clauses, *Mannetti-Farrow, Inc.*

15  *v. Gucci America, Inc.*, 858 F.2d 509, 514 (9th Cir. 1988), this

16  would be a closer case if there was any evidence Laird had assented

17  or otherwise conducted itself according to *any* of the terms

18  embodied in the Purchase Order documents.  *See Roberts & Schaefer*

19  *Co. V. Merit Contracting, Inc.*, 99 F.3d 248 (7th Cir. 1996)(holding

20  forum selection clause contained in unsigned Purchase Order would

21  be enforced where subcontractor had negotiated terms of Purchase

22  Order and agreed to the same terms in earlier agreement covering

23  another project).[4]  But Laird has come forward with undisputed

24  ───────────────

25       [4] The Court received the parties' post-hearing letters
    regarding the case of *Comerica Bank v. Whitehall Specialties*, 352
26  F.Supp.2d 1077 (C.D.Cal. 2004).  As was the case in *Merit*
    *Contracting*, the Court recognizes that in certain circumstances,
27  courts have enforced forum selection clauses even where they were

Order - 10

1    evidence that the Purchase Order documents were never even seen by

2    the appropriate Laird executives due to an internal mistake.

3         Though RAHCO surmises that Laird reviewed the Purchase Order

4    documents and performed pursuant to its terms, RAHCO has provided

5    no evidence, which even if believed, would prove Laird's conduct

6    related to the terms and conditions set forth in the Purchase Order

7    documents.  Laird, on the other hand, has offered evidence which

8    controverts RAHCO's supposition and suggests that Laird's

9    performance was consistent with the terms of its own Budget Letter

10   and its own operating procedure, rather than the terms of the

11   Purchase Order. Furthermore, RAHCO has not offered any persuasive

12   evidence which would cause the Court to question the veracity of

13   Laird's facts.

14        The designated forum and law can control the cost and outcome

15   of potential litigation, impacting the parties' substantive rights.

16   Therefore, forum selection clauses are typically the product of

17   bargaining upon entering into a contract.  This is especially true

18   in contracts involving foreign entities.  The enforcement of forum

19   selection clauses must comport with due process. Due process

20   requires that individuals have "fair warning that a particular

21   activity may subject [them] to the jurisdiction of a foreign

22   sovereign," *Burger King Corp.*, 471 U.S. at 472.  Drawing all

23   inferences in favor of RAHCO, the Court cannot conclude, based on

24   the particular facts at hand, that Laird Electric, a Canadian

25

26   ────────────────────

27   not the product of specific negotiation between the contracting
     parties.

Order - 11

corporation solicited for work in Canada, had fair warning it could be haled into court in Washington. The Court finds it would be necessarily unreasonable to enforce the forum selection clause in this instance.

As there is no other basis for obtaining jurisdiction over this foreign defendant, the Court hereby **GRANTS** Defendant's Motion to Dismiss (Ct. Rec. 8). Plaintiff's complaint is **DISMISSED.**

**IT IS SO ORDERED.** The District Executive is directed enter this order and furnish copies to counsel, enter judgment in favor of the Defendant, and CLOSE the FILE.

**DATED** this    20th    day of October, 2006.


                    s/ Alan A. McDonald
                 ALAN A. McDONALD
        SENIOR UNITED STATES DISTRICT JUDGE

Order - 12